UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS LOGUIDICE,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>LVN RICH,<br><br>　　　　Defendant. | Case No. 1:18-cv-01652-JDP<br><br>FINDINGS AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF BE DENIED<br><br>OBJECTIONS, IF ANY, DUE IN 14 DAYS<br><br>ECF No. 3 |

Plaintiff Thomas Loguidice is appearing without counsel in this civil rights action brought under 42 U.S.C. § 1983. On November 28, 2018, plaintiff moved for injunctive relief "preventing defendants from denying plaintiff the diabetic medical care he needs, and, from accusing plaintiff of attempting to keep insulin syringes after the insulin injection is administered." ECF No. 3 at 1. At this stage of the litigation, defendant has not appeared. Nonetheless, given the gravity and urgency of plaintiff's allegations, the court requested that the California Office of the Attorney General ("OAG") respond to plaintiff's motion. ECF No. 10. On December 17, 2018, the California Office of the Attorney General filed an opposition to plaintiff's motion. ECF No. 14. On January 2, 2018, plaintiff filed a reply. ECF No. 18. Upon review of the filings, we recommend that plaintiff's motion for injunctive relief be denied.

## I. RELIEF REQUESTED

### A. Plaintiff's Motion

Plaintiff moved the court "for an order upon the defendants to show cause why an injunction should not issue preventing defendants from denying plaintiff the diabetic medical care he needs, and, from accusing plaintiff of attempting to keep insulin syringes after the insulin injection is administered." ECF No. 3 at 1. In the caption of this motion, plaintiff refers to it as a motion for a temporary restraining order and injunctive relief. *Id.* The court construes the motion as a motion for preliminary injunction, rather than a motion for a temporary restraining order, because plaintiff has failed to "certif[y] in writing any efforts made to give notice and the reasons why [notice] should not be required." Fed. R. Civ. Proc. 65(b)(1)(B) ("The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if . . . the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.").

In his motion, plaintiff alleges that "CCHS medical personnel have and continue to interfere with Plaintiff's need for insulin to treat his diabetic condition." ECF No. 3 at 2. Specifically, in his declaration, plaintiff alleges that on "10-19-2018 LVN Rich falsely accused [him] of trying to keep a syringe right after [he] received [his] insulin shot." *Id.* at 3. Thereafter, plaintiff alleges that his cell was searched, and that prison officials seized his "personally owned glucometer," which he alleges is an "allowable property item." *Id.* Plaintiff further alleges that he "had to stop going for [his] insulin because [he] fear[s] that [he] will be again falsely accused of keeping a syringe" and that he faces "a risk [of] serious health complications or death." *Id.* at 2-3.

### B. OAG's Opposition

In answer of the court's request for a response, the OAG states that it investigated plaintiff's allegations. ECF No. 14 at 2. Specifically, the OAG contacted J. St. Clair, M.D., who holds the position of Chief Medical Executive with the California Department of Corrections and Rehabilitation ("CDCR"), and asked him to look into whether plaintiff's medical needs are being

addressed. ECF No. 14-1 ¶¶ 1, 4. St. Clair's findings, as communicated via declaration, are summarized as follows:

Plaintiff, an inmate at Sierra Conservation Center ("SCC") who has type-two diabetes, has a prescription for daily insulin shots. ECF No. 14-1 ¶ 6. Inmates at SCC who require insulin shots are "brought to the insulin line where a medical staff person gives him the syringe to inject the insulin." ECF No. 14-1 ¶ 7. On October 19, 2018, a supervising registered nurse prepared a "counseling chrono,"[1] stating that plaintiff "had attempted to keep the syringe after taking his insulin shot." ECF No. 14-1 ¶ 8. A separate report, dated October 24, 2018, indicated that plaintiff "had been observed making several attempts to leave the insulin line with his insulin syringe." *Id.*

"Following Loguidice being caught attempting to leave with his insulin syringe, he began to refuse to take his insulin shots when brought to the insulin line." ECF No. 14-1 ¶ 9. Based on plaintiff's statements, St. Clair understands that plaintiff's refusals will continue until the counseling chrono is rescinded. *Id.*

St. Clair states that plaintiff's "medical condition is being regularly monitored by medical staff." *Id.* ¶ 10. On October 24, 2018, plaintiff saw a doctor, and "it was noted that [plaintiff] was at goal based on his laboratory results, but this was complicated by his noncompliance." *Id.* The doctor requested that plaintiff resume his insulin shots. *Id.* The following day, plaintiff saw a different doctor, and plaintiff informed him that he would take all his prescribed medicines except for insulin. *Id.* ¶ 11. In response, the doctor said that "the only person [plaintiff] is hurting by not taking insulin is himself." *Id.* On November 21, 2018, plaintiff saw a doctor and stated that he was continuing to refuse insulin "due to his complaint regarding the counseling chrono." *Id.* ¶ 12. The doctor discussed the risks of this choice with plaintiff, and prescribed him glipizide—"an oral anti-diabetic medication that will assist Loguidice's body in producing insulin so that his refusal to take insulin injections is less problematic." *Id.* Plaintiff "agreed with this course of treatment." *Id.*

---

[1] The OAG's filings do not explain what a "counseling chrono" is.

St. Clair opines that, despite refusing insulin shots, plaintiff's health is stable:

> Loguidice's health is currently stable with regard to his diabetes. His body is producing insulin because of the glipizide. He is being seen by a doctor approximately every thirty days so as to monitor his condition and encourage him to resume taking insulin. In addition, he is brought to the insulin line everyday, where he is seen by medical staff, and he could resume taking insulin at any time he wishes. Loguidice is well aware that, after taking his insulin shots, he must return the syringe to medical staff. He will not be accused of attempting to keep a syringe as long as he follows that procedure. I also meet with the other medical staff each day in what is called a "huddle," where we discuss various patients. Loguidice, his ongoing refusals of insulin, and the current state of his health are discussed regularly during these meetings.

*Id.* ¶ 13.

Finally, St. Clair states that plaintiff does not need his own glucometer. *Id.* ¶ 14. A glucometer is "a device for determining the concentration of glucose in the blood." *Id.* At SCC, prisoners with diabetes have their glucose level "tested each day at the insulin line." *Id.* St. Clair also opined that "patients with type 2 diabetes, such as Loguidice, do not require having their glucose levels measured regularly throughout the day because they do not suffer the sorts of 'crashes' in glucose levels that are common in patients with type 1 diabetes." *Id.* Glucometers are not allowed at SCC, which is why plaintiff's glucometer was confiscated. *Id.*

Based upon St. Clair's declaration, the OAG argues that plaintiff "is not likely to suffer irreparable harm from the actions of SCC medical staff" or from the confiscation of the glucometer "in the absence of preliminary relief." ECF No. 14 at 5. Moreover, the OAG argues that "the balance of equities in this case do not tip in the favor of Loguidice" and that "Loguidice has not demonstrated that he is likely to succeed on the merits of his case." *Id.* Finally, the OAG states that the "it is clearly not in the public's interest to allow an inmate to use the refusal of medical care as a vehicle for forcing prison authorities to remove documents from the inmate's file that he happens to disagree with." *Id.*

### C. Plaintiff's Reply

On January 3, 2019, plaintiff filed an untimely[2] reply to defendant's opposition. ECF No. 18. Plaintiff argues that St. Clair's declaration should be "stricken from the record, as it is not based upon any personal knowledge" in contravention of Federal Rule of Evidence 602 and Federal Rule of Civil Procedure 56(c)(4). *Id.* at 1. He also states that LVN Rich "remains entirely silent as to whether she falsely accused Plaintiff to scare him off." *Id.*

## II. LEGAL STANDARDS

Injunctive relief, whether temporary or permanent, is an "extraordinary remedy, never awarded as of right." *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 22 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Glossip v. Gross*, 135 S. Ct. 2726, 2736-37 (2015) (quoting *Winter*, 555 U.S. at 20); *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). Alternatively, under the so-called sliding scale approach, if the plaintiff demonstrates the requisite likelihood of irreparable harm and can show that an injunction is in the public interest, a preliminary injunction may issue so long as serious questions going to the merits of the case are raised and the balance of hardships tips sharply in plaintiff's favor. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-36 (9th Cir. 2011) (concluding that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after *Winter*). Under either approach, the injunctive relief sought must be related to the claims brought in the complaint. *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015) ("When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction."). Due to the exigent nature of a preliminary injunction, a court may consider hearsay and other evidence that would otherwise be inadmissible at trial. *See Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009); *see also Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th

---

[2] Plaintiff states that his "mail has taken a much longer time to receive than normal," so the court will consider his submission. ECF No. 18 at 1.

1 | Cir. 1984) ("The trial court may give even inadmissible evidence some weight, when to do so
2 | serves the purpose of preventing irreparable harm before trial.").

The Prison Litigation Reform Act ("PLRA") imposes additional requirements on prisoner litigants who seek preliminary injunctive relief against prison officials. "Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). As the Ninth Circuit has previously observed, the PLRA places significant limits upon a court's power to grant preliminary injunctive relief to inmates, and "operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators—no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Gilmore v. People of the State of California*, 220 F.3d 987, 998-99 (9th Cir. 2000).

### III. ANALYSIS

The court will recommend that plaintiff's motion for injunctive relief be denied because plaintiff has failed to establish the imminent irreparable harm required to support a preliminary injunction. *See Winter*, 555 U.S. at 20; *Alliance for the Wild Rockies*, 632 F.3d at 1131. Plaintiff alleges that he "had to stop going for [his] insulin because [he] fear[s] that [he] will be again falsely accused of keeping a syringe." ECF No. 3 at 2-3. The court reserves judgment on whether plaintiff was initially falsely accused of stealing syringes, but the OAG has demonstrated, via the declaration of St. Clair, that SCC medical staff have affirmatively ensured that plaintiff's health remains stable, despite plaintiff's voluntary choice to forego insulin shots. After the point when plaintiff began refusing to take insulin shots, he has seen doctors several times, been provided glipizide, and his condition appears stable. St. Clair's declaration does not definitively prove that plaintiff is not at risk of false accusations, but it does rebut plaintiff's allegations of a "a risk [of] serious health complications or death." ECF No. 3 at 2-3.

The arguments plaintiff raises in plaintiff's reply brief do not change the result. Even if the court were to accept plaintiff's conclusory allegations that St. Clair, a Chief Medical Executive at SCC, does not have personal knowledge of plaintiff's medical treatment, a court

may consider inadmissible evidence at the preliminary injunction stage.  *See Johnson*, 572 F.3d at 1083.  Plaintiff's objection under Federal Rule of Civil Procedure 56 likewise lacks merit, because Rule 56 governs summary judgment rather than injunctive relief.  Finally, LVN Rich is under no obligation to submit a declaration for this motion, and her silence does not affect this analysis.

Where a plaintiff fails to demonstrate a likelihood of irreparable harm without preliminary relief, the court need not address the remaining elements of the preliminary injunction standard.  *See Center for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir. 2011).  Considering the foregoing, plaintiff's motion for preliminary injunction should be denied.

**IV.     RECOMMENDATION**

Accordingly, the court recommends that plaintiff's motion for injunctive relief be denied.  The undersigned submits these findings and recommendations to the U.S. district judge presiding over the case under 28 U.S.C. § 636(b)(1)(B) and Local Rule 304.  Within 14 days of the service of the findings and recommendations, the parties may file written objections to the findings and recommendations with the court and serve a copy on all parties.  The document containing the objections must be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The presiding district judge will then review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C).  The parties' failure to file objections within the specified time may waive their rights on appeal.  *See Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:     January 3, 2019                                     _____
                                                                                    UNITED STATES MAGISTRATE JUDGE

7